Docket No. 23-13439-B

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

*KAREN FINN et al.,*                                    *Plaintiffs-Appellees,*

*v.*

*COBB COUNTY BOARD OF ELECTIONS*        *Defendants-Appellees,*
*& REGISTRATION, et al.,*

*and*

*COBB COUNTY SCHOOL DISTRICT,*          *Intervenor-Appellant.*

---

On appeal from the United States District Court for the Northern
District of Georgia; Civil Action File No. 1:22-CV-02300-ELR

---

## BRIEF OF INTERVENOR-APPELLANT COBB COUNTY
## SCHOOL DISTRICT

---

Philip W. Savrin
William H. Buechner, Jr.
P. Michael Freed
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
(770) 818-0000

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

The following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1.    ACLU Foundation of Georgia, Inc. – Counsel for Appellees

2.    Anderson, Scott Eric – Counsel for Appellant

3.    Buechner, Jr., William H. – Counsel for Appellant

4.    Cobb County Board of Elections and Registration – Defendant

5.    Cobb County School District – Appellant

6.    Crumly, Jonathan, D. – Counsel for Appellant

7.    Daly, Hylah – Appellee

8.    Dulcio, Jenne – Appellee

9.    Eveler, Janine – Defendant (in her official capacity)

10.   Freed, P. Michael – Counsel for Appellant

11.   Freeman Mathis & Gary, LLP – Counsel for Appellant

12.   Finn, Karen – Appellee

13.    Ford, Dr. Jillian – Appellee

14.    Galeo Latino Community Development Fund, Inc. – Appellee

15.    Garabadu, Rahul – Counsel for Appellees

16.    Georgia Coalition for the Peoples Agenda, Inc. – Appellee

17.    Gold, Sofia Fernandez – Counsel for Appellees

18.    Greenbaum, Jon – Counsel for Appellees

19.    Haynie, Litchfield & White, PC – Counsel for Defendants Cobb
County Board of Elections and Janine Eveler in her official
capacity

20.    Heard, Bradley E. – Counsel for Appellees

21.    Houk, Julie M. – Counsel for Appellees

22.    Isaacson, Cory – Counsel for Appellees

23.    Koff, Douglas I. – Counsel for Appellees

24.    Lawyers' Committee for Civil Rights Under Law – Counsel for
Appellees

25.    League of Women Voters of Marietta-Cobb – Appellee

26.    Loperfido, Jeff – Counsel for Appellees

27.    O'Donnell, Courtney – Counsel for Appellees

28.    May, Caitlin – Counsel for Appellees

29.  Mott, Thomas L. – Counsel for Appellees

30.  New Georgia Project Action Fund – Appellee

31.  Price, Savannah – Counsel for Appellees

32.  Rosenberg, Ezra D. – Counsel for Appellees

33.  Ross, Honorable Eleanor L. – United States District Judge

34.  Savrin, Philip W. – Counsel for Petitioner

## STATEMENT ON ORAL ARGUMENT

Appellees brought this case under 42 U.S.C. § 1983, alleging that the Cobb County School District racially gerrymandered three of its seven Board of Education electoral districts in violation of the Fourteenth Amendment's Equal Protection Clause. They are seeking a judicial redrawing of the current district map.

This appeal presents a novel procedural issue: when a nonparty intervenes as of right upon satisfying the requirements of Fed. R. Civ. P. 24(a)(2), can the district court later prohibit the intervenor from participating in the case when the factors that first warranted intervention remain unchanged? This case's unique procedural history, the lack of authority on the question presented, and the substantive issues ultimately at stake warrant oral argument to assist this Court in its decisional process.

Appellant has filed a motion to expedite this appeal. Consistent with that motion and for the reasons stated therein, Appellant requests this Court set oral argument at its earliest convenience.

# TABLE OF CONTENTS

**Statement on Oral Argument** ............................................................... i

**Table of Contents** ................................................................................ ii

**Table of Authorities** .......................................................................... iv

**Jurisdictional Statement** ................................................................... 1

**Statement of Issues** ............................................................................ 1

**Statement of the Case** ........................................................................ 2

I.    Facts Relevant to the Appeal .......................................................... 3

    A.    The Board considered creating a new district map ............... 3

    B.    The Board voted along party lines to recommend the "Chair's Map" to the Georgia General Assembly. ................................. 4

    C.    The State of Georgia enacted the redistricted map through the legislative process. ............................................................ 5

II.    Procedural History .......................................................................... 6

    A.    Appellees' Amended Complaint targeted the Board's Republican majority. ................................................................ 6

    B.    Appellees strategically sued only the Election Defendants. .. 9

    C.    The District intervened as a matter of right upon showing that it had legal interests in the case the Election Defendants were not protecting ........................................... 11

    D.    The District Court held that Appellees could not sustain a claim against the District but did not dismiss their racial gerrymandering claim against the Election Defendants. .... 12

    E.    The District Court revoked the District's intervention rights. ............................................................................................. 13

F.   The Election Defendants joined forces with Appellees to ensure their Motion for Preliminary Injunction will not be opposed. ................................................................................ 15

G.   The District timely appealed and sought preliminary relief from this Court to ensure it can protect its rights pending appeal. ........................................................................................ 16

**Summary of the Argument** ................................................................ 18

**Argument** ................................................................................................ 19

I.    Standard of Review ........................................................................ 19

II.   The District Court lacked discretion to revoke the District's intervention rights. ........................................................................ 22

A.   The District established entitlement to intervention as of right. .......................................................................................... 22

B.   The District Court's order dismissing Appellees' claim against the District did not extinguish the District's intervention rights. ............................................................... 24

C.   The District Court revoked the District's intervention rights without regard for Rule 24(a)(2)'s requirements. ................ 26

III.  Even if the District Court granted permissive intervention, it abused its discretion by removing the District ............................. 29

**Conclusion** ................................................................................................ 31

**Certificate of Compliance** .................................................................. 32

**Certificate of Service** .......................................................................... 33

# TABLE OF AUTHORITIES

## Cases

*Chiles v. Thornburgh*, 865 F.2d 1197 (1989) .............................. 22, 23, 27

*Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161 (11th Cir. 2019) ................................................................... 19

*Fox v. Tyson Foods, Inc.*, 519 F.3d 1298 (11th Cir. 2008) ....................... 1

*Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242 (11th Cir. 2002) ................................................................................................ 22

*Hines v. D'Artois*, 531 F.2d 726 (5th Cir. 1976) ......................................... 1

*Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278 (11th Cir. 2017) ...................................................................... 22

*Trbovich v. United Mine Workers of Am.,* 404 U.S. 528 (1972) .............. 23

*United States v. Jim*, 891 F.3d 1242 (11th Cir. 2018) ....................... 27, 29

*United States v. State of Ga.*, 19 F.3d 1388 (11th Cir. 1994) ................. 27

## Statutes

28 U.S.C. § 1331 ......................................................................................... 1

28 U.S.C. § 1343 ......................................................................................... 1

28 U.S.C. § 1367 ......................................................................................... 1

42 U.S.C. § 1983 .................................................................................. i, 2, 3

## Rules

Fed. R. Civ. P. 24(a)(2) ...................................................... i, 11, 22, 23, 27

Fed. R. Civ. P. 24(b)(1)(B) ................................................................. 11, 30

Fed.R.App.P. 4(a)(1)(A) ........................................................................... 1

N.D. Ga. Local R. 7.1(D) ......................................................................... 16

iv

## JURISDICTIONAL STATEMENT

The United States District Court for the Northern District of Georgia had original subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1343.

This Court has provisional jurisdiction over this appeal. Appellant appeals from the District Court's ruling revoking its right to intervene under Fed. R. Civ. P. 24. A district court's denial of a motion to intervene is immediately appealable under this Court's provisional jurisdiction. *See Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1301 (11th Cir. 2008) (recognizing that this Court has "provisional jurisdiction" over denials of motions to intervene); *Hines v. D'Artois*, 531 F.2d 726, 737 (5th Cir. 1976) (finding appellate jurisdiction over district court's order vacating its previous order granting intervention as of right).

Appellants timely filed their notice of appeal on October 12, 2023, within 30 days of the District Court's oral order prohibiting it from continuing to participate in the case as an intervenor on September 12, 2023. *See* FED. R. APP. P. 4(a)(1)(A).

## STATEMENT OF ISSUES

Did the District Court error in revoking Appellant's intervention upon finding that Appellees cannot sustain a viable claim against it, but

1

Appellant's interests in the case that warranted intervention as of right remain unchanged?

## STATEMENT OF THE CASE

Appellees brought this case under 42 U.S.C. § 1983, alleging that the Cobb County School District racially gerrymandered three of its seven Board of Education electoral districts in violation of the Fourteenth Amendment's Equal Protection Clause. But as a practical matter, this case is about nothing more than politics. Appellees are simply seeking a judicial veto of a political defeat. The redistricted map—enacted into law by the State of Georgia through the democratic process—does not serve Appellees' political interests. So they took to the courts.

Appellees began their crusade by suing only the Cobb County Board of Elections and Registration, even though it played no role in drawing or enacting the map, and their allegations focused on the District's purported wrongdoing. Their decision was calculated to minimize opposition. And it worked at first when the Board of Elections disclaimed any interest in defending the map.

That led the District to move to intervene to protect its interests. Appellees never contested the District's satisfaction of the requirements for intervention as of right. So the District Court granted the motion.

This appeal arises from the District Court's reversal of that decision. The District Court revoked the District's intervention rights upon finding that Appellees failed to allege a viable § 1983 claim against the District. Its error lies in disregarding the District's ongoing interest in the case, even without a viable claim against it. Because the factors warranting the District's intervention remain unchanged, the District Court lacked the discretion to reverse course.

## I.    Facts Relevant to the Appeal

### A.    The Board considered creating a new district map.

The United States Census Bureau completed the 2020 census in 2021. (Doc. 64 at ¶94.)[1] Georgia law allows local governmental agencies, including county school boards, to draw recommended redistricted maps after each decennial census. But the General Assembly is the only body authorized to enact new local electoral maps.

---

[1] https://www.census.gov/programs-surveys/decennial-census/decade/2020/planning-management/release/timeline.html (last visited Nov. 13, 2023.)

The Cobb County Board of Education ("Board") is the District's governing body. At the relevant time, the Board comprised four Republicans and three Democrats. (Doc. 64 at ¶2.) The four Republican members each happened to be White, and the three Democratic members each happened to be Black. (*Id.*) Randy Scamihorn, a Republican, served as the Board Chair. (*Id.*)

As permitted by Georgia law, the Board began planning to create a new map for its seven districts to present to the General Assembly in 2021. (*Id.* at ¶¶94-96.) It hired Bryan Tyson, a lawyer with extensive experience and expertise in redistricting law, to help draw proposed maps. Each member was invited to meet with counsel to prepare proposed maps for the Board's consideration. (*Id.* at ¶¶2-3) Tyson met with each of the seven Board members or their representatives to discuss their respective redistricting priorities and, if requested, to draw proposed maps accordingly. (*Id.* at ¶102.)

## B. The Board voted along party lines to recommend the "Chair's Map" to the Georgia General Assembly.

The Board convened for a work session on December 9, 2021. (*Id.*) The agenda included consideration of three proposed redistricted maps drawn by Tyson: one submitted by Leroy "Tre" Hutchins (Democrat),

one by Charisse Davis (Democrat), and another Tyson labeled the "Chair's Map," which he drew based on criteria Chairman Scamihorn provided at the start of the process. (*Id.* at ¶102; Doc 37 at ¶142.) Tyson presented each map to the Board, highlighting their compliance with the Voting Rights Act and constitutional requirements.

At the close of Tyson's presentation, Davis moved to keep the existing district map rather than recommend a new map. (*Id.* at ¶104.) The Board rejected her motion by a 4-3 party-line vote. (*Id.*) The Board then voted to adopt and recommend the Chair's Map, again by a 4-3 vote along party lines. (*Id.*)

## C.    The State of Georgia enacted the redistricted map through the legislative process.

The General Assembly took up the Board's recommended map during its 2022 legislative session under House Bill 1028. (Doc. 37 at ¶44.) Both legislative chambers passed the bill, and Governor Kemp signed it into law on March 2, 2022. (*Id.*); (*see also,* https://www.legis.ga.gov/legislation/61369, last visited Nov. 1, 2023.)

## II.    Procedural History

### A.    Appellees' Amended Complaint targeted the Board's Republican majority.

Appellees Finn, Ford, Daly, and Dulcio are Cobby County residents and registered voters living in one of the challenged districts. (Doc. 37 at ¶¶16-19.) The remaining Appellees are nonprofit civil rights organizations who sued on behalf of their members. (*Id.* at ¶¶20-41.) Those organizations each allege that the redistricted map frustrates and impedes their core missions. (*Id.* at ¶¶20-41.)

Smitten by their political defeat, this coalition contrived this racial gerrymandering suit seeking to overturn the democratically enacted district map. They claim the new map "packed" Black and Latinx voters into districts 2, 3, and 6, thereby diluting their political power. (*Id.* at ¶¶1, 4, 10.) But they did not limit their allegations to the map and its boundaries, demographical issues, redistricting principles, or the Equal Protection Clause's requirements. Instead, they fixated on the Board's Republican members. Appellees cast those four members as the leading villains in their story, repeatedly accusing them of actively discriminating against the Black Democratic members and Black and Latinx residents.

6

Their Amended Complaint took aim at the Board from its first sentence. (*Id.* at ¶1) ("In response to the rapid diversification of Cobb County and the growing political power of the county's Black and Latinx population, the [Board] and state legislators improperly used race as a predominant factor in [drawing the new district map].") From there, they consistently framed the divisions among Board members as being based on race rather than politics. (*See, e.g.*, *id.* at ¶2) ("The Board's four white members . . . forged ahead with a secretive map-drawing process to maintain their tenuous majority over the Board's three Black members . . . fit[ing] within their pattern and practice of subjecting the Black Board members and their constituents of color to racially disparate policies enacted along racial lines over the course of the last several years."); (*id.* at ¶ 58) ("[In 2018] the white members began enacting arbitrary policies based on race that grant white Board members the ability to address key concerns with respect to the Cobb County School system, while silencing and ignoring the concerns of the Black Board members to the detriment of Black and Latinx students and their families.") As a general example, Appellees intentionally conflated race with party affiliation. Throughout their Amended

Complaint, they labeled the competing Board delegations as the "Black Board members" and "White Board members" even though using "Democratic Board members" and "Republican Board members" would not change the accuracy of their allegations. Appellees used that framing to create the impression that Board Republicans' decisions and actions on *any issue* were implicitly motivated by race. They weaved that theme throughout their Amended Complaint in service of their repeated accusations of racial animus by the Board's Republican members.

Many of Appellees' specific race-based complaints have nothing to do with the Board's redistricting process. For example, Appellees allege that the Board enacted new policies in 2018 to "silence" Black voices by preventing its Black Democratic members from raising issues related to race. (*Id.* at ¶¶59-65.) They then accuse Board Republicans of discriminating against Black and Latinx students and their families by refusing to rename Wheeler High School (*id. at* ¶¶70-73), banning critical race theory (*id.* at ¶¶74-79), ignoring concerns over COVID-19 protocols (*id.* at ¶¶80-85), and ignoring students' concerns over racism in schools. (*Id.* at ¶¶86-93.)

Appellees set their racist caricature of the Board Republicans as the backdrop for the redistricting process. (*Id.* at ¶113) ("In keeping with their other recent actions led by the white Board members, race was at the forefront of the 2022 redistricting process before the Board.") They accused the Republican members of skirting customary practices to clandestinely hire Tyson and his firm to help draw proposed maps. (*Id.* at ¶¶94-101.) Appellees claimed that the Democratic members were given less access to Tyson than their counterparts (which was proven untrue in discovery). (*Id.* at ¶103.) Finally, they complained that the Republicans "sprung" the Chair's map on them the night before the meeting, depriving them of the opportunity to review it. (*Id.* at ¶105.)

## B. Appellees strategically sued only the Election Defendants.

Despite their vitriolic focus on the Board Republicans, Appellees did not sue them individually, nor did they sue the Board as a body or the District. (*See generally*, Doc. 37.) Instead, they strategically sued only the Cobb County Board of Elections and Registration and its director ("Election Defendants"). (*Id.*)

Their decision is telling. First, it flouts the factual allegations on which they built their claim—that Board Republicans, driven by racial

9

prejudice, intentionally diluted the power of Black and Latinx voters by packing them into certain districts. The Election Defendants, in contrast, played no part in developing, recommending, or enacting the allegedly unconstitutional map. (Doc. 190-1 at 3-4.) Appellees' Amended Complaint does not allege otherwise. (Doc. 37 at ¶¶147-55.)  Second, unlike the Board of Education, Democrats comprise a majority of the Board of Elections.[2] Appellees presumed the Election Defendants would be politically aligned with their cause, betting that those political dynamics would give them little motivation to defend the constitutionality of the redistricted map.

Their bet paid off. In their initial filings, the Election Defendants conceded, "[t]hey do not have any interest in either defending or challenging the constitutionality of the adopted maps." (Docs. 30-1 at 12; 43-1 at 14.) Appellees thus managed to position their case against a merely nominal defendant.

---

[2] *See* https://www.cobbcounty.org/elections/about/board (last visited Nov. 21, 2023).

### C.    The District intervened as a matter of right upon showing that it had legal interests in the case the Election Defendants were not protecting.

By that point in the case, Appellees had accused the Board and its Republican members of a three-year pattern of racial discrimination ending with them rigging the decisional process to adopt a racially gerrymandered redistricted map. And the Election Defendants had explicitly disclaimed any intent to defend that map.

So the District moved to intervene. (Docs. 52, 52-1.) It focused its motion on intervention as of right under Fed. R. Civ. P. 24(a)(2). (Doc. 52-1 at 20-25.) The District showed the requisite interest in the case based on Appellees' extensive allegations against it and the effect of a redrawn map. (*Id.* at 21-22.) It also sufficiently demonstrated that its interests were not adequately protected because the Election Defendants were uninterested in defending the case. (*Id.* at 23-25.) Alternatively, the District moved for permissive intervention under Fed. R. Civ. P. 24(b)(1)(B). (*Id.* at 25.)

Appellees did not dispute the District's entitlement to intervention as of right. (Doc. 54.) They consented to the District intervening without distinguishing between intervention as of right and permissive

11

intervention. (*Id.*) The Election Defendants also consented. (Doc. 55.) But they consented to intervention as of right expressly. (*Id.*)

The District Court granted intervention on January 30, 2023, "upon the consent of the parties and for good cause shown." (Doc. 60 at 1.) It did not specify whether it was granting intervention as of right or permissively. (*Id.*)

### D. The District Court held that Appellees could not sustain a claim against the District but did not dismiss their racial gerrymandering claim against the Election Defendants.

The parties began discovery after the District joined the case. Consistent with their disinterested approach, the Election Defendants largely sat on the sideline while the District led the way.

In the meantime, the District moved for judgment on the pleadings. (Doc. 83.) It asked the District Court to dismiss the case as a whole because the State of Georgia—which held the exclusive power to enact the redistricted map—was not a party. (*Id.* at 1-2, 4, 8-9, 12-19.) The District also asserted that Appellees lack Article III standing to sue the Election Defendants. (Doc. 98 at 11-13.) Secondarily, the District contended that Appellees did not allege facts against it to support a claim for *Monell* liability. (Doc. 83 at 11-15.)

The District Court granted the District's motion for judgment on the pleadings on the *Monell* ground only on July 18, 2023. (Doc. 136 at 29-34.) But it held that Appellees had standing and rejected the argument that the State was the only entity against which they could assert a viable claim. (*Id.* at 21-26.) As a result, Appellees' racial gerrymandering claim against the Election Defendants, based mainly on allegations against the Board, survived.

The District Court's order said nothing about the District's ongoing participation in the case. It did not dismiss the District or instruct the clerk to terminate it from the docket. Nor did it question or even mention the District's ability to continue participating in the case as an intervenor.

### E. The District Court revoked the District's intervention rights.

The District continued to assert its rights as an intervenor in the weeks following the court's July 18 order. (Docs. 140, 144, 147, 149-152, 155.) It appears the last straw for Appellees was the District moving to exclude their experts on August 22, 2023. (Doc. 155.) The next day, they moved to "enforce" the District Court's July 18 order to exclude the District from continuing to participate in the case as an intervenor.

13

(Doc. 157 at 1-2.) Their motion did not attempt to show that the District no longer satisfied the requirements for intervention as of right. (*Id.* at 2-13.)

The District Court held a telephone conference to discuss several pending issues on September 12, 2023. (Doc. 182.) It began by addressing the District's status in the case. (*Id.* at 4.) Despite intending to do otherwise, the court acknowledged that its July 18 order did not direct the clerk to enter judgment or terminate the District from the docket. (*Id.* at 5.) Even so, the court ruled that the District was dismissed from the case as of July 18, 2023, and could no longer participate. (*Id.*) The court did not explain how its July 18 order eliminated the District's status as an intervenor as of right, nor did it provide any legal authority supporting its ruling. (*Id.* at 4-6.) Consistent with its ruling forbidding the District from further participation, the District Court did not allow the District's attorneys to speak on the issue. (*Id.* at 6.) The court notified the parties that it would enter a written order memorializing its ruling. (*Id.* at 5.) It did not do so, however, until November 2, 2023. (Doc. 199.)

14

The District Court's written order offered reasoning for its decision. Citing the general principle that an intervenor gains "equal standing with the original parties," the District Court concluded that the District's role ceased upon receiving judgment on the pleadings in its favor the same as if it was an original defendant. (*Id.* at 11.) Again, the District Court did not analyze whether the District's interests warranting intervention as of right remained. (*Id.*)

### F.    The Election Defendants joined forces with Appellees to ensure their Motion for Preliminary Injunction will not be opposed.

With the District out of the way, Appellees moved quickly to eliminate further opposition. They entered into a stipulated settlement agreement with the Election Defendants that barred the latter from taking any action adverse to their crusade to redraw the map. (Doc. 190-1.)  The agreement outlined Appellees' plan to move for a preliminary injunction barring enforcement of the current map. (*Id.* at 5.) The Election Defendants agreed not to oppose that motion in writing or at a hearing. (*Id.*) The Election Defendants are also barred from filing any dispositive motions, responding to motions filed by any third parties, or appealing any order from the District Court. (*Id.* at 7-9.)

15

The Election Defendants' surrender cleared the path for Appellees' unopposed march. They moved for a preliminary injunction and filed a 55-page brief in support on October 23, 2023.[3] (Docs. 194, 194-1.) Appellees requested a ruling by December 15, 2023, prohibiting the Election Defendants from conducting elections under the current map. (Doc. 194-1 at 52-53.) They also asked the District Court to impose a "remedial map" by January 22, 2024, to allow implementation before the 2024 election cycle. (*Id.* at 53.) The Election Defendants have not opposed Appellees' motion per their settlement agreement.

### G. The District timely appealed and sought preliminary relief from this Court to ensure it can protect its rights pending appeal.

The District filed a notice of appeal of the District Court's September 12 oral ruling on October 12, 2023.[4] (Doc. 185.) After the case was docketed in this Court, the District moved for a stay pending appeal to allow it to continue protecting its interests below in response

---

[3] The District Court granted Appellees' motion for leave to file a brief 30 pages longer than its Local Rules allow. (Doc. 193); N.D. Ga. Local R. 7.1(D). The Election Defendants, of course, were barred from opposing the motion.

[4] The District previously petitioned this Court for a writ of mandamus. (*See In re: Cobb County School District*, Case No. 23-13185.) The Court denied that petition.

to Appellees' motion for preliminary injunction. The District simultaneously moved for an expedited appeal to benefit all parties. That motion is still pending.

In the meantime, the District Court has allowed the District leave to file an amicus brief in opposition to Appellees' motion for preliminary injunction. (Doc. 201.) The District was forced to limit its amicus brief to 25 pages, while Appellees were granted leave to file a *55-page* brief. (Doc. 193.) That discrepancy disadvantaged the District. That aside, providing an opinion as a "friend of the court" is a far cry from being a party that can participate actively in the case. The District has been excluded from the expert discovery process, resulting in Appellees' experts never having been deposed. Nor does it grant the District the right to submit rebuttal evidence, cross-examine or rehabilitate witnesses, or participate in any hearing on Appellees' motion or subsequent proceedings. The District's inability to participate as a party (and its absolute need to intervene) is made worse because the Election Defendants consented to being contractually barred from either filing an appeal or opposing any appeal by Appellees.

17

## SUMMARY OF THE ARGUMENT

The District's ongoing satisfaction of the requirements for intervention as of right has never been disputed. Appellees did not oppose the District's showing when it moved to intervene. Nor did they ever contend that the District Court's July 18 order extinguished the District's interests that first warranted uncontested intervention. The District Court never found that the District does not satisfy the prerequisites for intervention as of right. Yet it revoked the District's right to intervene based only on its holding that Appellees cannot sustain a viable § 1983 claim against it. The District Court had no discretion to do so.

The District Court's error lies in treating the District like an original defendant when analyzing the effect of its July 18 order. In doing so, it disregarded that the District's interests in the case went far beyond Appellees' ability to sustain a claim against it. In the end, the District Court banned the District from continuing to participate as an intervenor without considering the District's ongoing interest in the case that will go unprotected.

18

That inquiry makes clear that the District's intervention rights are as clear after the July 18 order as they were when it first moved to intervene. Appellees' racial gerrymandering claim against the Election Defendants continues to be litigated. Appellees still base that claim heavily on their allegations of racial prejudice by Board Republicans. And the Election Defendants have doubled down on their refusal to defend the map by entering into the agreement with Appellees prohibiting them from doing so.

Because the District continued to meet the requirements for intervention as of right, the District Court lacked the discretion to exclude it. This Court should reverse that order.

## ARGUMENT

## I.    Standard of Review

The de novo standard of review applies to the denial of a motion to intervene as of right under Fed. R. Civ. P. 24(a), and the abuse of discretion standard to the denial of permissive intervention under Rule 24(b). *Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1170 (11th Cir. 2019). The former applies here.

The District's motion to intervene focused overwhelmingly on showing entitlement to intervention as of right. (Doc. 52-1 at 14-23.) It

19

demonstrated that it has a legally protectable interest in the litigation based on Appellees' central allegation that Board Republicans, driven by a history of racial animus, used race as a predominant factor in drawing their recommended map. (*Id.* at 21-22.) Moreover, the remedy Appellees seek—a redraw of the map—directly impacts the Board, its composition, and its ability to fulfill its public duty to provide a high-quality education to Cobb County students. (*Id.*) Lastly, the Election Defendants' explicit refusal to defend the map established that no party would protect the District's interests. (*Id.* at 23-25.)

Neither Appellees nor the Election Defendants contested the District's ability to intervene as of right. Appellees consented to the District's motion without distinguishing between the two grounds. (Doc. 54.) The Election Defendants, by contrast, explicitly consented to the District intervening as of right under Rule 24(a) *only*. (Doc. 55 at 1.)

The District Court granted the motion on the parties' consent "and for good cause shown" without limiting the District's participation. (Doc. 60.) But it did not specify whether it was granting intervention as of right or permissively. (*Id.*) The District Court states in its November 2, 2023 written order that, based on the parties' consent, it "did not rule

on the issue of permissive intervention versus intervention as a matter of right." (Doc. 199 at 2.) But it avoided resolving the issue and did not address the District's detailed showing of entitlement to intervention as of right, which Appellees have never contested. Nor did the District Court's November 2 written order address the fact that the District meets the standard for intervention as of right, and that its order granting intervention imposed no conditions or limitations on the District's involvement. It also failed to recognize that the Election Defendants' consent was limited to intervention as of right. So the consent on which the Court based its order was limited to intervention as of right.

As discussed below, the District Court reversed its order granting intervention when it barred the District from continuing to participate as an intervenor. That decision was the same as the denial of intervention as of right. Consequently, this Court should apply the de novo standard.

## II.    The District Court lacked discretion to revoke the District's intervention rights.

### A.    The District established entitlement to intervention as of right.

The District undisputedly met the requirements for intervention as of right when it moved to join the case. *See* Fed. R. Civ. P. 24 (a)(2). It demonstrated an interest in the case based on Appellees' allegations against it and the fact that it would bear the consequences of a redrawn map. (Doc. 52-1 at 20-25.); *see Chiles v. Thornburgh*, 865 F.2d 1197, 1212 (1989) ("The focus therefore of a Rule 24 inquiry is whether the intervenor has a legally protectable interest in the litigation."); *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1295 (11th Cir. 2017) ("Under circuit precedent, all that is required under Rule 24(a)(2) is that the would-be intervener be practically disadvantaged by his exclusion from the proceedings.") (cleaned up); *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1251 (11th Cir. 2002) ("To determine whether [the movant] possesses the requisite interest for intervention purposes, we look to the subject matter of the litigation."). The requirement that the District's interests were not adequately protected without intervention required no inquiry; by then, the Election Defendants had disclaimed any interest in defending the

22

constitutionality of the map. *See Chiles*, 865 F.2d at 1214 ("The Supreme Court has held that the inadequate representation requirement is satisfied if the proposed intervenor shows that representation of his interest may be inadequate and that the burden of making that showing should be treated as minimal.") (cleaned up) (citing *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n. 10, (1972)).

Appellees never contested the District's entitlement to intervention as of right or argued that it did not satisfy Rule 24(a)(2)'s requirements. (Doc. 54.) Instead, it consented to the District intervening. (*Id.*)

The District Court granted the motion without limiting the District's involvement in the case or conditioning its participation on Appellees sustaining a viable claim against it. (Doc. 60.) Its order stated only that it granted the District's motion "upon consent of the parties and for good cause shown." (Doc. 60 at 1.) It did not expound on the "good cause" supporting its ruling. (*Id.*) Later, it cited the parties' consent in explaining why it did not specify whether it granted intervention as of right or permissively. (Doc. 199 at 2.) But even if the

23

District Court's decision related only to the parties' consent, it *must*

have been based on intervention as of right. That was the only basis for

which *unanimous* consent was given; the Election Defendants' response

stated only that the District "should be allowed to intervene *as of right*

under Fed. R. Civ. P. 24(a)." (Doc. 55 at 1) (emphasis added.)

In sum, the District established the requirements for intervention

as of right when it moved to join the case. Consent was granted on that

basis. No party argued, nor did the District Court find, that the District

did not have a sufficient interest in the case or that the Election

Defendants were protecting that interest.

**B.    The District Court's order dismissing Appellees' claim
against the District did not extinguish the District's
intervention rights.**

Nothing changed when the District Court granted the District's

motion for judgment on the pleadings. The District's interest in the case

remained the same, and the Election Defendants persisted in refusing

to defend the map's constitutionality. Appellees never asserted, nor did

the District Court find, otherwise.

The District Court's decision in the District's favor was based on

*Monell*. It held that Appellees failed to state a plausible § 1983 racial

gerrymandering claim against the District because their allegations did not establish a policy, custom, or practice that caused any violation of their constitutional rights. (*Id.* at 33-34.) That aside, the District Court rebuffed the District's and Election Defendants' requests to dismiss Plaintiff's Amended Complaint in its entirety. It held that Appellees have standing to sue the Election Defendants and rejected the argument that their only viable claim was against the State of Georgia. Thus, The order did not diminish Appellees' claim against the Election Defendants in any way.

The same is true of the District's interests. Appellees' racial gerrymandering claim against the Election Defendants proceeded. They still based that claim on the same extensive allegations of racial prejudice against the Board Republicans. And they kept pursuing the same remedy—a redrawn map intended to reshape the Board's composition. Also unchanged was the Election Defendants' refusal to defend the current map, which they soon cemented in their agreement with Appellees.

So all the factors supporting the District's intervention as of right in January 2023 remained the same after the July 18 order. Appellees

did not argue to the contrary in moving to oust the District. (Doc. 157.) Instead, they rested on the simplistic notion that the District Court's grant of judgment on pleadings terminated the District's right to participate in the case *in any capacity*. (*Id.*) This District Court adopted Appellees' reasoning.

### C. The District Court revoked the District's intervention rights without regard for Rule 24(a)(2)'s requirements.

The District Court's fundamental error was not viewing the District's right to continue in the case through the lens of the intervention standard. By prohibiting the District from proceeding as an intervenor, the District Court effectively reversed its earlier order allowing intervention. So the same factors governed. But the District Court ejected the District without applying them; it failed to analyze whether the District's ability to establish the prerequisites for intervention had been eliminated, mitigated, or materially changed.

That analysis has but one conclusion: the District still has an interest in the case that the Election Defendants are not protecting just as it did when the District Court first allowed it to intervene. The July 18 order did not affect the District's standing as an intervenor as of

right under Rule 24(a)(2). As a result, the District Court lacked the discretion to deny the District its right to continue as an intervenor. *See United States v. State of Ga.*, 19 F.3d 1388, 1393 (11th Cir. 1994) ("Once a party establishes all the prerequisites to intervention, the district court has no discretion to deny the motion."); *Chiles*, 865 F.2d at 1213 (stating that a court "must" allow intervention if the requirements of Rule 24(a)(2) are met).

Rather than being guided by Rule 24's requirements, the District Court treated the District like an original defendant who won judgment on the pleadings. (Doc. 199 at 11.) Its written order relied on the general principle that an intervenor gains equal standing as the original parties when it joins a case. (*Id.*) But it stretched that rule too far. An intervenor has the same *rights* as the original parties. It can conduct discovery and file motions. It can even have a judgment entered against it. *See United States v. Jim*, 891 F.3d 1242, 1252-53 (11th Cir. 2018).

That said, despite having equal standing to litigate, an original defendant and an intervenor-defendant do not necessarily have the same interests. An original defendant usually wants out of a case as

27

soon as possible. It no longer has an interest to protect or a role to play in the case when the claims against it are disposed of.

An intervenor, by contrast, injects itself into a case. It does so not to subject itself to liability for plaintiff's claims (though that may be the result if unsuccessful) but to protect a unique interest in the litigation that would go unprotected but for its participation. In that way, defending against a claim can be distinct from protecting an interest. The latter includes the former because an intervenor's successful protection of its interest will lead to defeating plaintiff's claim. But it can be broader. An intervenor-defendant can have an interest in a case without a viable claim against it.

This case illustrates these differences. The District affirmatively inserted itself into the case, intervening as a defendant. It assumed the risk of potential liability for Appellees' racial gerrymandering claim in exchange for the ability to protect its interests that the Election Defendants were ignoring. The District managed to avoid liability for Appellees' claim by obtaining a judgment on the pleadings. But that did not vindicate the interests that prompted its intervention.

The District Court incorrectly equated the District's defense of Plaintiff's claim with the defense of its interests. That caused it to bar the District from the case based solely on its successful defense regardless of its ongoing interest in the litigation. Thus, it appears the District Court applied the rule that an intervenor has equal standing with the original parties to exclude the intervenor in a way no other court has before.[5] The only consequence of the July 18 order is that the District is no longer at risk of having a judgment entered against it. *C.f.*, *Jim*, 891 F.3d at 1252-53 (recognizing that by intervening as defendant, an intervenor exposes itself to the risk of having a judgment entered against it).

## III. Even if the District Court granted permissive intervention, it abused its discretion by removing the District.

The analysis above largely applies if the District Court granted permissive intervention. The District established that it has a defense that shares common questions of law or fact with Appellees' claim

---

[5] The District has been unable to find any other cases in which a court revoked intervention as of right upon a finding that the plaintiff cannot sustain a claim against the intervenor but its interest in the case remained. Neither Appellees nor the District Court cited such a case below.

against the Election Defendants. (Doc. 52-1 at 25); Fed. R. Civ. P. 24(b)(1)(B). In fact, the questions of law and fact were identical; Appellees' racial gerrymandering claim rested on allegations against the District, not the Election Defendants who had no role in creating or enacting the redistricted map. The other parties consented to the District's intervention and never argued that it could not satisfy Rule 24's requirements. The District Court never found otherwise.

As with intervention as of right, the District Court's grant of judgment on the pleadings did not change the equation. The same factors that supported permissive intervention on January 30, 2023, were still present as of September 12, 2023, and remain present now. Appellees' claim still depended on allegations of racial discrimination by Board Republicans and the map drawer they retained. Yet the District Court rescinded the District's intervention rights without finding that it could no longer satisfy the requirements. The record does not support such a finding. So the District Court abused its discretion by taking away the District's ability to continue as an intervenor even if it granted intervention permissively.

30

## CONCLUSION

For these reasons, this Court should reverse the District Court's

September 12, 2023 order terminating the District's status as an

intervenor as of right or as a permissive intervenor under Rule 24.

*/s/ P. Michael Freed*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com
William H. Buechner, Jr.
Georgia Bar No. 086392
bbuechner@fmglaw.com
P. Michael Freed
Georgia Bar No. 061128
michael.freed@fmglaw.com

*Attorneys for Cobb County School District*

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(833) 330-3669 (facsimile)

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, removing excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 5,777 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: November 22, 2023.

/s/*P. Michael Freed*
P. Michael Freed
Georgia Bar No. 061128

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing **Brief of Appellant** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants.

Dated: November 22, 2023.

/s/ *P. Michael Freed*
P. Michael Freed
Georgia Bar No. 061128